In re **INTER–OP HIP PROSTHESIS PRODUCT LIABILITY LITIGATION.**

No. 1:01–CV–9000.

United States District Court, N.D. Ohio, Eastern Division.

Sept. 17, 2001.

Charles R. Parker, Hill & Parker, Houston, TX, Daniel E. Becnel, Jr., Reserve, LA, Don Barrett, Barrett law office, P.A., Lexington, MS, Janet G. Abaray, Lopez Hodes Restaino Milman Skikos Polos, Cincinnati, OH, John R. Climaco, Climaco Lefkowitz Peca Wilcox & Garofoli, Cleveland, OH, Keith M. Fleischman, Milberg Weiss Bershad Hynes & Lerach, LLP, New York City, Phillip A. Ciano, Ciano & Goldwasser, Beachwood, OH, R. Eric Kennedy, Weisman, Goldberg & Weisman, Cleveland, OH, Richard S. Wayne, Strauss & Troy, Cincinnati, OH, Stanley M. Chesley, Waite, Schnedier, Bayless & Chesley, Cincinnati, OH, Steven M. Tindall, Lieff, Cabraser, Heimann & Bernstein, San Francisco, CA, Timothy J. Gallagher, Schwarzwald, Rock & McNair, Cleveland, OH, Wendell H. Gauthier, Gauthier, Downing & LaBarre, Metairie, LA, for plaintiff.

J. Patrick Herald, Richard M. Franklin, Baker & McKenzie, Chicago, IL, James J. Dries, Baker & McKenzie, Chicago, IL, Jeffrey M. Whitesell, Arter & Hadden, Cleveland, OH, Sheryl Medeiros, Skadden Arps Slate Meagher & Flom, San Francisco, CA, for Sulzer Medica Ltd., defendant.

J. Patrick Herald, Richard M. Franklin, Baker & McKenzie, Chicago, IL, Jeffrey M. Whitesell, Irene C. Keyse–Walker, Robert C. Tucker, Arter & Hadden, Cleveland, OH, Sheryl Medeiros, Skadden Arps Slate Meagher & Flom, San Francisco, CA, Bradley D. Honnold, David W. Brooks, Harvey L. Kaplan, Matthew D. Keenan, Shook, Hardy & Bacon, Kansas City, MO, Kenneth M. Seeger, Crosby, Heafey, Roach & May, San Francisco, CA, Richard F. Scruggs, Scruggs Law Firm, Pascagoula, MS, Sidney A. Backstrom, Pasagoula, MS, Steven J. Boranian, Crosby, Heafey, Roach & May, San Francisco, CA, for Sulzer Orthopedics Ltd., defendant.

Irene C. Keyse–Walker, Robert C. Tucker, Arter & Hadden, Cleveland, OH, Bradley D. Honnold, David W. Brooks, Harvey L. Kaplan, Matthew D. Keenan, Shook, Hardy & Bacon, Kansas City, MO, Richard F. Scruggs, Scruggs Law Firm, Pascagoula, MS, Sidney A. Backstrom, Pasagoula, MS, for Sulzer Orthopedics Inc. Sulzer Medica USA Inc., defendant.

Bridget M. Meehan, Baker & Hostetler, Cleveland, OH, Werner L. Polak, Shear-

man & Sterling, New York City, for Sulzer A.G., defendant.

Irene C. Keyse–Walker, Robert C. Tucker, Ater & Hadden, Cleveland, OH, for Sulzer USA Holding Co.

Lee Squitieri, Squitieri & Fearon, New York City, for Texas plaintiffs.

Mark M. Sandmann, Rawlings & Associates, Louisville, KY, for movant in Sulzer Orthopedics Inc. Hip Prosthesis and knee Prosthesis Products Liability Lit. interested party Blue Cross Blue Shield of Louisiana.

Robert J. Fogarty, Thomas A. Cunniff, Hahn, Loeser & Parks, Cleveland, OH, for Aetna, Inc. & Cobalt Corp.

## MEMORANDUM AND ORDER

O'MALLEY, District Judge.

Defendants move for an Order enjoining related state-court litigation (docket no. 71). The plaintiffs do not oppose the motion. Other interested parties, however, have objected to the entry of the requested injunctive relief.[1]

For the reasons stated below, the defendants' motion is **GRANTED** . Accordingly, the Court hereby **ENJOINS:** (a) any and all persons from commencing or continuing prosecution (b) of any claim or action or legal proceeding (c) in any federal, state, or territorial court (d) against the "Sulzer Defendants"[2] or their assets (e) related in any way to claims arising out of an alleged product defect in Sulzer Orthopedic, Inc.'s Inter–Op acetabular shell hip implant.

This injunction shall remain in force until further Order of the Court. The Court retains jurisdiction to: (1) modify or vacate this injunction if circumstances change; and (2) lift the injunction as it applies to any person prosecuting any given legal proceeding, for good cause shown, on a case-by-case basis.

The parties are **ORDERED** to notify any interested party of this Order, as soon as and to the fullest extent reasonably possible.

### I. Background.

As described more fully in the Court's Order dated August 31, 2001, this case revolves around the manufacture and distribution by defendant Sulzer Orthopedics, Inc. of an orthopedic hip implant known as the "Inter–Op Acetabular shell." Sulzer Orthopedics recalled approximately 40,000 units of its Inter–Op shell because of an

1. The plaintiffs and the defendants both earlier filed motions for an Order enjoining all other litigation involving the Inter–Op shells from proceeding. The Court later granted the parties' joint oral motion to voluntarily withdraw their motions to enjoin related litigation, without prejudice. The Court, however, received a number of objections to the parties' original motions, by virtue of the Court's earlier invitation to all interested parties to submit letters objecting to the then-pending motions. The Court has thoroughly reviewed all of those letters of objection during its consideration of the defendants' renewed motion to enjoin related litigation.

2. The Sulzer Defendants are defined to include, for the purposes of the injunctive relief entered in this Order: (1) Sulzer Orthopedics Inc. and each of its affiliates, including Sulzer Medica Ltd. and each of Sulzer Medica Ltd.'s other past, present and future parent companies and direct or indirect subsidiaries, together with each of their respective past, present and future directors, officers, affiliates, insurers, employees, customer-physicians (and related hospitals and medical suppliers), and agents, including without limitation, sales agents; and (2) Sulzer AG, a limited company organized under the laws of Switzerland, and all of its past, present and future parent companies and direct or indirect subsidiaries, its and their respective past, present and future directors, officers, affiliates, insurers, employees, customer-physicians (and related hospitals and medical suppliers), and agents.

alleged manufacturing defect; about 26,-000 of the Inter–Op shells had already been implanted in patients, and it is estimated that about 4,500 of these patients will have to have "revision surgery" to remove and replace the defective implants.

To date, there are pending about 1,580 civil suits nationwide, brought by plaintiffs against Sulzer Orthopedics and related entities. About 220 of these suits are in federal court. The Federal Judicial Panel on Multi–District Litigation ("MDL Panel") consolidated and transferred all related pending federal litigation to the Northern District of Ohio and assigned oversight of the MDL proceedings to the undersigned. Thus, virtually all of the federal cases involving the Inter–Op acetabular shell have either been transferred to this Court or are in the process of being transferred to this Court.

The 1,580 state and federal cases involve about 2,000 named plaintiffs, primarily including implant recipients and their spouses. Over 90% of the state court actions have been filed in California, Texas, Florida, or New York. About 19 of the state court cases are styled as class actions, as are about 34 of the federal court cases. The defendants named in these lawsuits include not only Sulzer Orthopedics, but also: (1) Sulzer Medica USA Holding Company ("Sulzer Medica USA"), a holding company that owns Sulzer Orthopedics; (2) Sulzer Medica Ltd., a Swiss holding company that owns Sulzer Medica USA; (3) Sulzer AG, a Swiss company that previously owned a majority of the stock of Sulzer Medica Ltd.; (4) various other Sulzer-related entities; and (5) various surgeons, hospitals, and medical supply companies connected to the distribution or implantation of the defective product. The causes of action in these lawsuits include claims for defective design, marketing and manufacture; breach of express and implied warranties; negligence; strict liability; and other legal theories of recovery. At least one state court case has been tried, resulting in a $15 million verdict against Sulzer Orthopedics.[3] About 40 of these state-court actions are set for trial before the end of the calendar year.

After this Court appointed temporary liaison and co-lead counsel to represent the plaintiffs in the MDL proceedings, plaintiffs' counsel filed an "amended and consolidated class action complaint." In addition, plaintiffs' counsel filed a motion for conditional class certification, and for preliminary approval of the proposed class settlement agreement. The defendants also filed a motion for preliminary approval of the proposed class settlement agreement. On August 29, 2001, the Court entered an Order essentially granting these motions—the Court conditionally certified a settlement class,[4] preliminarily approved

---

**3.** The verdict was entered on August 30, 2001, in the Nueces County, Texas state court case of *Rupp v. Sulzer Orthopedics, Inc.*, no. 01–60581–4.

**4.** The Court conditionally certified the settlement class pursuant to Fed.R.Civ.P. 23(b)(2) and (b)(3), defined as follows: " 'All citizens or residents of the United States who have had Affected Inter–Op acetabular shell hip implants placed in their bodies, together with their associated consortium claimants.' Further, this class shall be divided into two sub-

classes, as follows: Subclass 1 shall consist of those class members who undergo revision surgery prior to the Final Judicial Approval Date to correct problems with the Affected Inter–Op shells, and their associated consortium claimants. Subclass 2 shall consist of class members who may need to undergo revision surgery after the Final Judicial Approval Date to correct problems with the Affected Inter–Op shells, and their associated consortium claimants." Order at 1–2 (Aug. 29, 2001) (footnote omitted).

the proposed class settlement agreement,[5] and preliminarily appointed class co-counsel.

At the same time that the plaintiffs and defendants filed their motions for conditional class certification and preliminary approval of the settlement agreement, they also filed motions for an Order enjoining all other litigation involving the Inter–Op shells from proceeding. The Court later granted the parties' joint oral motion to voluntarily withdraw these motions, without prejudice. With their most recent motion, the defendants now renew their original request for injunctive relief. As noted above, however, before the parties withdrew their original motions for injunctive relief, the Court invited any person (including persons not parties to any federal proceeding) wishing to object to the pending motions to submit their comments in writing. The Court received about 41 such comments. The Court has reviewed all of these comments in detail, once again, during the course of its consideration of the defendants' renewed motion for injunctive relief.

On September 13, 2001, following its entry of the Order conditionally certifying the settlement class and preliminarily approving the proposed class settlement agreement, the Court entered its Case Management Order ("CM Order"). Among other things, the CM Order: (1) set forth a very aggressive schedule for discovery, which is to be directed primarily at the issue of the fairness of the proposed settlement agreement; (2) created a mechanism ensuring that counsel representing plaintiffs in various related state court actions will participate in this MDL discovery, and share in review of all MDL discovery; (3) set forth a schedule for issuance of notice to the class; (4) arranged for the Court to meet with the parties monthly (at a minimum) to assess the progress of the case and to resolve any disputes; and (5) set dates for the final fairness hearing and for submission of objections to the final proposed settlement agreement. The defendants filed their pending motion for an Order enjoining related litigation four days later, on September 17, 2001—two days before a related California state court case is scheduled to begin trial.

## II. Legal Standards and Analysis.

■ There are two statutes that govern the propriety of a federal district court's issuance of an order enjoining state court litigation: the Anti–Injunction Act, and the All–Writs Act. Under the terms of the Anti Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283. If an injunction falls within one of these three exceptions, then the All–Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings: "all courts established by an

---

5. The Court approved the proposed settlement agreement pursuant to Fed.R.Civ.P. 23(e), *"conditioned upon* the submission of an amended proposed class settlement agreement, within 10 days of the date of this Order, that: (1) does not purport to settle claims related to the implantation of 'Natural Knee Tibial Baseplates;' (2) incorporates the revisions referred to in docket no. 50 ('Revisions to the Class Action Settlement Agreement'); and (3) clarifies 'Article 8' of the agreement to accurately recite how subrogation claims will be treated, as explained in open court during the August 28, 2001 preliminary fairness hearing." Order at 2 (Aug. 29, 2001). Plaintiffs subsequently received a brief extension of time and filed an amended proposed class settlement agreement on September 14, 2001 (docket no. 68).

act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. These two statutes "act in concert, and the parallel 'necessary in aid of jurisdiction' language is construed similarly." *In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation*, 134 F.3d 133, 143 (3rd Cir.1998).

■ The Anti–Injunction Act "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). The parties in this case assert that the second exception applies in this case. The Supreme Court has explained that the second exception—allowing a district court to enjoin state court litigation when "necessary in aid of its jurisdiction"—means that a district court may provide "federal injunctive relief . . . to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.* at 295, 90 S.Ct. 1739. At least four different Circuit Courts of Appeals have affirmed that this exception can apply "to consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation." *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1201 (7th Cir. 1996) (citing *Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 197 (3rd Cir.1993); *In re Baldwin–United Corp.*, 770 F.2d 328, 336 (2nd Cir.1985); and *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334–35 (5th Cir.1981)).[6] Indeed, a federal court's "*failure* to issue an injunction may create the very 'needless friction between state and federal courts' which the Anti Injunction Act was designed to prevent." *Winkler*, 101 F.3d at 1203 (quoting *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 9, 60 S.Ct. 215, 84 L.Ed. 537 (1940) (emphasis added)). Another district court in this Circuit has also reached a similar conclusion. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 93 F.Supp.2d 876, 881 (M.D.Tenn.2000) ("as the current case is a MDL, this Court has authority to issue an injunction [to protect its discovery orders] under the All Writs Act even though it is not a traditional in rem action").

The Court concludes that, given the unique circumstances of this case, the defendants' motion for injunctive relief enjoining related state court litigation is well-taken and authorized under the Anti–Injunction Act and the All–Writs Act. For several reasons, the Court is convinced that, given the current posture of this ac-

---

**6.** *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir.1998) (affirming the district court's injunction of state court proceedings where it had preliminarily approved a nationwide class settlement); *White v. National Football League*, 41 F.3d 402, 409 (8th Cir.1994), *cert. denied*, 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995) (affirming where district court had approved a settlement agreement in a complex class action lawsuit, and enjoined related actions pursued in other fora); *In re School Asbestos Litigation*, 1991 WL 61156 (E.D.Pa. Apr.16, 1991), *affirmed without op.*, 950 F.2d 723 (3rd Cir. Nov. 26, 1991) (district court issued injunction prohibiting absent class members from pursuing duplicative state court litigation because of the "complexity" of the federal action and the "possible" settlement); *In re Diet Drugs*, 2000 WL 1222042 at *71 (E.D.Pa. Aug.28, 2000) (district court approved a settlement agreement in a MDL class action lawsuit, and enjoined related actions); *In re Consolidated Welfare Fund ERISA Litigation*, 798 F.Supp. 125, 127–28 (S.D.N.Y.1992) (same).

tion, allowing the state court plaintiffs to pursue their parallel state court actions will frustrate the proceedings in this case and disrupt the orderly resolution of the MDL litigation.

First, in light of the onerous and expedited discovery schedule set by this Court in its CM Order, it would pose an undue burden upon the defendants if they are forced to maintain their defenses in the related state court actions. Indeed, it appears likely impossible for the defendants to respond both to the discovery obligations mandated by this Court and the innumerable state court Rule 30(b)(6) deposition requests; the same executives would be tapped for both, where participating in either would be a virtual full-time responsibility. The sum of the state court discovery requirements would subject the defendants to "unnecessarily duplicative and costly efforts when a fairness hearing has already been scheduled in the district court." *Carlough,* 10 F.3d at 204. The defendants face about 40 "hip implant" trials in the next few months, alone. This realized "potential for an onslaught of state actions pose[s] more than a risk of inconvenience or duplicative litigation; rather, [it] ... threaten[s] to 'seriously impair the federal court's flexibility and authority' to approve settlement[ ] in the multi-district litigation." *In re Baldwin–United Corp.,* 770 F.2d at 337 (quoting *Atlantic Coastline* 398 U.S. at 295, 90 S.Ct. 1739). The Court's CM Order requires, among many other things: (1) defendants to submit written discovery responses (likely involving many tens of thousands of documents) by the end of September of 2001, with monthly supplementation;[7] (2) depositions to begin immediately and be concluded by year's end; (3) publication of preliminary class notice to occur by October 10, 2001; and (4) the parties to attend a final fairness hearing on March 12, 2002. This schedule will require the parties to undertake a massive effort, all within six months. Without some protection from the distraction to the defendants that the state court cases would create, it is extremely unlikely the parties in this case will meet this Court's deadlines or have the time and manpower to make the fairness hearing scheduled by this Court a meaningful one.

Second, the plaintiff class, itself, is likely to suffer substantial harm if the separate state court actions are not enjoined. A substantial portion of the money available to pay successful plaintiffs will come from "wasting" insurance policies, which means that expenditures on duplicative and possibly unnecessary discovery defense costs will proportionally and materially reduce the total funds available to pay injured claimants. The defendants aver their state court defense costs have been running at over $1 million per month, and are likely to rise to between $2 million and $5 million per month if the state court cases proceed to trial. An injunction actually works to preserve assets against which all plaintiffs may ultimately recover. *See In re Consolidated Welfare Fund ERISA Litigation,* 798 F.Supp. 125, 127–28 (S.D.N.Y.1992) (invoking the "necessary in aid of jurisdiction" exception to enjoin related state court cases in an MDL proceeding, because the related cases threatened to deplete MDL settlement assets). By preserving the entirety of the defendants' assets, the Court's injunction works to increase the likelihood of a fair resolution of this case. "[T]he jurisdiction of a multidistrict court is 'analogous to that of

---

**7.** Plaintiffs have already served the defendants with 191 interrogatories and 439 requests for production.

a court in an in rem action ... where it is intolerable to have conflicting orders from different courts.'" *In re Baldwin–United Corp.*, 770 F.2d at 337 (quoting 17 C. Wright & A. Miller & E. Cooper, Federal Practice & Procedure § 4225 at 105 n. 8 (Supp.1985)).[8] Looking beyond defense costs, the parties' ability to craft a fair final settlement agreement is disturbed even further to the extent a verdict against the defendants is reached, or enforced, in any state court case.

Third, it is important that this Court has given preliminary approval to an *opt-out* settlement agreement, which could have the effect of resolving a sea of potential claims. As noted, over 26,000 people have received Inter–Op hip implants; they, together with their spouses, probably represent over 35,000 potential plaintiffs. The preliminarily approved settlement agreement could effectively preempt the need for the filing of thousands of cases, in both state and federal courts. To allow the state court actions to proceed would "serve only to frustrate th[is] district court's efforts to craft a settlement in the multidistrict litigation before it." *In re Baldwin–United Corp.*, 770 F.2d at 337. *See In re General Motors Corp.*, 134 F.3d at 145 (a federal district court's issuance of an injunction necessary in aid of its jurisdiction is appropriate "in the context of a complex class action which was also an MDL case where a settlement was imminent; where the federal court had already expended considerable time and resources; and where the pending state action threatened to derail the provisional settlement"); *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 134 F.R.D. 32, 36 (E.D.N.Y.1990) (enjoining related state

court litigation because the "pending cases, if allowed to continue independently, will seriously hinder the ability of the court to evaluate the adequacy and fairness of the proposed settlement of the class action by constantly depleting [the defendant's] assets"). The presence of opt-out rights, moreover, protects plaintiffs who may not want to participate in the settlement while still allowing the parties to finalize (and the Court to approve) a settlement that may resolve many claims. *See Carlough*, 10 F.3d at 204 (noting that the existence of opt out rights supports injunction of state court actions pending imminent settlement of a federal class action case); *James v. Bellotti*, 733 F.2d 989, 994 (1st Cir.1984) (indicating that the existence of a provisionally-approved settlement justifies a protective injunction against state court suits brought by the same parties); *In re Baldwin–United Corp.*, 770 F.2d at 333 (injunction appropriate when state court actions "would prevent the [federal class action] plaintiffs from benefitting from any settlement already negotiated or from reaching a new and improved settlement in the federal court"). It is also notable that the Court has been careful to create a mechanism ensuring that counsel representing plaintiffs in the state court actions will participate and share in discovery in this case. Indeed, under the Court's CM Order, a plaintiff electing to opt out of any settlement will still enjoy the benefits of class counsel's substantial, aggressive discovery on critical issues; the opt-out plaintiff will not need to "repeat" this discovery for himself and, in fact, probably could not obtain it as quickly on his own. In exchange for this substantial "discovery" benefit, a plaintiff who later chooses to opt out will be delayed, at most, about six

---

**8.** It is fair to state that: (1) the preliminarily approved settlement agreement pledges the entirety of the defendants' assets to the class; and (2) this pledge is "the virtual equivalent of a res over which [this Court] require[s] full control." *In re Baldwin–United Corp.*, 770 F.2d at 337.

months, given the Court's aggressive scheduling of the fairness hearing.

Finally, as noted above, about 19 of the state court cases are styled as class actions. This case has already been conditionally certified as a national class action, and notices to the class are scheduled to be issued shortly. There is no question but that class certification in any one of the state court cases, and the accompanying issuance of class notice, "presents a likelihood that the members of the [state] class will be confused as to their membership in the dueling lawsuits," and "could cause havoc." *Carlough*, 10 F.3d at 204.

For all of these reasons, the Court concludes that the motion for an Order enjoining related state court litigation is well taken.

**IT IS SO ORDERED.**