Constance Tague Otley **BLEDSOE**

v.

**FULTON BANK.**

**Civil Action No. 96–CV–4518.**

United States District Court, E.D. Pennsylvania.

Sept. 26, 1996.

Kevin A. Palmer, Butera, Beausang, Cohen & Brennan, King of Prussia, PA, for Plaintiff.

George C. Werner, Barley, Snyder, Senft & Cohen, Lancaster, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

Plaintiff Constance Tague Otley Bledsoe instituted this action (1) to obtain a declaration that Defendant Fulton Bank violated federal law by requiring her to guaranty a loan to her former husband and (2) to enjoin the enforcement of the confessed judgments obtained in two state courts pursuant to the allegedly unlawful guaranty agreement. Presently before this Court is Defendant's Motion to Dismiss the Complaint on the grounds that federal adjudication of Plaintiff's claim would interfere with the collection actions now pending in the state courts. Specifically, Defendant contends that the federal declaratory judgment and injunction that Plaintiff seeks would violate the Anti–Injunction Act and Younger abstention doctrine, and would not be a sound exercise of our discretion under the Declaratory Judgment Act. For the reasons that follow, the Motion is granted.

## BACKGROUND

The facts relevant to the instant motion are not disputed. In 1988, Defendant extended a line of credit to Plaintiff's former husband, Rodger Bledsoe,[1] to fund his used automobile business. Both Mr. and Mrs. Bledsoe signed an unlimited guaranty for the debt incurred on this line of credit. The loan went into default and, on or about July 26, 1995, Defendant confessed judgment against the Bledsoes under the guaranty agreement in the amount of $81,035.89 in the Courts of Common Pleas of Lancaster and Chester

---

1. Constance and Rodger Bledsoe were divorced in 1995.

Counties. In the collection actions now pending in each of these courts, Plaintiff Mrs. Bledsoe has petitioned to strike and/or open the confessed judgments on the grounds that Defendant obtained the guaranty from her in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.,* and Federal Reserve Board Regulation B ("Regulation B"), 12 C.F.R. § 202.7(d), promulgated pursuant to the ECOA. Execution of the judgments has been stayed pending resolution of the petitions.

Plaintiff now seeks to litigate these claims in federal court. In particular, Plaintiff asks this Court to declare that the guaranty agreement is null and void as between her and Fulton, to enjoin Fulton from "further collection activity under the Guaranty and the judgments obtained thereunder," and to order Fulton to "take immediate steps to mark satisfied and/or stricken the judgments entered ... in Lancaster and Chester Counties." (Pl.'s Compl. at ¶ 22, 25). As in the petitions filed in state court, Plaintiff's claims rest on the ECOA and Regulation B.

## DISCUSSION

Defendant argues that we should dismiss Plaintiff's Complaint on any of three distinct and alternative bases: the Anti–Injunction Act, the Younger abstention doctrine, and the discretion afforded under the Declaratory Judgment Act itself. Because we agree that the Anti–Injunction Act bars the relief sought by Plaintiff in this case, we do not reach the other two contentions. We must first address, however, Plaintiff's contention that the Third Circuit's decision in *Silverman v. Eastrich Multiple Investor Fund, L.P.,* 51 F.3d 28 (3d Cir.1995), controls our disposition of this motion.

### I. The Silverman Decision

The facts of *Silverman* are strikingly similar to this case in that there, as here, plaintiff (an aggrieved spouse) sought federal declaratory and injunctive relief from a confessed judgment entered in state court under a guaranty agreement allegedly obtained in violation of the ECOA and Regulation B. The district court dismissed the action as barred by the statute of limitations, finding that the

ECOA's two-year statute of limitations for bringing an affirmative claim under the act also barred its defensive use more than two years after the date of the last alleged violation. *Silverman v. Eastrich Multiple Investor Fund, L.P.,* 857 F.Supp. 447, 453 (E.D.Pa.1994). The Third Circuit reversed this determination. Noting that Pennsylvania's confession of judgment provisions do not permit the debtor or guarantors to respond when judgment is entered, the court reasoned that "plaintiff's alleged ECOA violation [is] asserted as a defense to the state confession of judgment." *Id.* at 32. The court thus held that the purposes of the "broad remedial provision" of the ECOA were best served by permitting the act to be used defensively even after the statute had run. *Silverman,* 51 F.3d at 33. The court concluded:

> [a]ccordingly, we will remand to the district court for a hearing to determine, factually and legally, whether Atlantic violated the ECOA in requiring plaintiff's signature ... On the basis of these findings, if appropriate, the district court should reconsider granting the request for injunctive relief.

*Id.* at 33–34.

Plaintiff argues that the factual similarity of the *Silverman* plaintiff's legal claim, and the Third Circuit's decision to allow her action to proceed, compels a similar result in this case. Though Plaintiff concedes that neither the district court nor the Third Circuit discussed the Anti–Injunction Act or other possible grounds for abstention, she contends that "[p]resumably, if there was something improper or inappropriate about proceeding this way, the Third Circuit would not have so plainly recognized [the plaintiff's] right to bring her claims in federal court in response to the state court confession of judgment." (Pl.'s Supp.Mem. in Opp. to Mot. to Dismiss at 2). In short, the "broad remedial purpose of ECOA set forth in *Silverman*" requires us to allow Plaintiff's suit to proceed. *Id.*

Though not without force, Plaintiff's arguments fail to acknowledge the crucial fact distinguishing her case from *Silverman,*

namely, that in this case there are two ongoing state collection actions in which Plaintiff has already raised her federal claims. In *Silverman*, the plaintiff filed her federal declaratory judgment action just nineteen days after judgment had been confessed in state court, apparently before the filing of any collection action in which the plaintiff would have had an opportunity to assert her ECOA claim. *Silverman*, 51 F.3d at 30. There was no pending state court proceeding in *Silverman* with which a declaratory judgment or injunction would interfere, thus the Third Circuit had no occasion to reach the issues now before us.[2] Therefore, we find that *Silverman* simply does not speak to whether the relief Plaintiff now seeks must be granted in federal court or whether a state court may adequately vindicate her federal ECOA rights in a collection action subsequent to a confessed judgment.[3] We now address this question.

## II. The Anti–Injunction Act

■■■ Defendant argues that the declaratory and injunctive relief sought by Plaintiff would violate the Anti–Injunction Act. This Act provides that

> [a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. As the Third Circuit has explained, "[t]his statute, with a venerable lineage that postdates the Bill of Rights by a mere two years, is designed to avert needless friction between state and federal courts." *U.S. Steel Corporation Plan for Employee Insurance Benefits v. Musisko*, 885 F.2d 1170, 1173 (3d Cir.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990) (hereinafter *"U.S. Steel"*); *see also*

*Mitchum v. Foster*, 407 U.S. 225, 232–33, 92 S.Ct. 2151, 2156–57, 32 L.Ed.2d 705 (1972). The Act applies when "(1) a court of the United States (2) grants an injunction (3) to stay proceedings (4) in a state court." *U.S. Steel*, 885 F.2d at 1175 (citing 17 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4222 (1988)). The first element is clearly present and, as to the second, the Third Circuit has long held that "where ... declaratory relief would produce the same effect as an injunction, a declaratory judgment is barred if section 2283 would have prohibited an injunction." *U.S. Steel*, 885 F.2d at 1175 (citing *Thiokol Chemical Corp. v. Burlington Indus., Inc.*, 448 F.2d 1328, 1332 (3d Cir.1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972)). The question is whether the relief Plaintiff seeks would stay proceedings in a state court. We note at the outset that all doubts are to be resolved in favor of allowing the state court action to proceed. *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296–97, 90 S.Ct. 1739, 1747–48, 26 L.Ed.2d 234 (1970).

Plaintiff argues that the Anti–Injunction Act does not prohibit the equitable relief she requests because she "does not seek to enjoin a state officer or state proceeding." (Pl.'s Mem. Contra Def.'s Mot. to Dismiss at 2–3) (emphasis deleted). Rather, Plaintiff contends that she seeks only "to enjoin [Defendant] from trying to enforce or collect upon the illegally obtained guaranty, and seeks a declaration that the guaranty is void as to her alone." (*Id.* at 3). Because the Act "by its terms only applies to injunctions of state court proceedings," Plaintiff contends that the Act "is not implicated in any way." (*Id.* at 3 and n. 4).

We agree with Defendant, however, that Plaintiff's argument ignores the extensive case law on this issue. In *Atlantic Coast*

---

**2.** The Third Circuit's direction to the district court in *Silverman* to, "if appropriate, ... reconsider the request for injunctive relief" seems to acknowledge that there are circumstances under which such relief would not be appropriate. 51 F.3d at 34. We must now decide whether the existence of state collection actions in which the alleged federal rightholder has a fair opportunity to litigate her federal claims presents such a circumstance.

**3.** Research reveals no case that interprets *Silverman* as providing for the relief Plaintiff seeks in the factual setting presently before us. Nor can we find any judicial opinion deciding whether the Anti–Injunction Act bars the equitable relief now sought by Plaintiff. We appear to be the first court to decide this question.

*Line,* the Supreme Court held unequivocally that "[t]he prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." 398 U.S. at 287, 90 S.Ct. at 1743. Further, the Third Circuit has stressed that the literal construction that Plaintiff suggests should be rejected in favor of an examination the "practical result" of the relief sought. *U.S. Steel,* 885 F.2d at 1170; *see also 1975 Salaried Retirement Plan v. Nobers,* 968 F.2d 401, 405 (3d Cir.1992), *cert. denied,* 506 U.S. 1086, 113 S.Ct. 1066, 122 L.Ed.2d 370 (1993); *Texas Employers' Ins. Ass'n v. Jackson,* 862 F.2d 491, 505 (5th Cir.1988), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989) (holding that § 2283 must not be reduced to "an anachronistic, minor technicality, easily avoided by mere nomenclature or procedural sleight of hand"). In *U.S. Steel,* for example, the district court had enjoined the plaintiffs from proceeding with their claims in state court under any law other than ERISA despite a Pennsylvania Superior Court decision in their favor based on state law. *Id.* at 1172–73. The Third Circuit reversed this order, holding that it "had the effect of a stay within the meaning of [§ 2283]" because its "practical result" was to "prevent the state trial judge from proceeding in accordance with the Superior Court's direction ... [thus] obstructing and interfering with the state courts' process." *Id.*

We find that the equitable relief sought by Plaintiff in this case would have a similar practical result here. Declaring that Defendant obtained Plaintiff's guaranty in violation of federal law would "obstruct and interfere with the state courts' process" by effectively terminating the dispute—indeed, this is surely why Plaintiff instituted this federal action. Enjoining Defendant from further enforcement efforts would, practically, enjoin the state court collection actions from proceeding. Likewise, an order that Defendant should "take immediate steps to mark satisfied and/or stricken the judgments entered ... in Lancaster and Chester Counties" based on our resolution of Plaintiff's federal

claims would amount to little more than a direct order to the state courts themselves. We find, in short, that because the clear result of awarding the declaratory judgment and injunction that Plaintiff seeks would so obstruct and interfere with the state court proceedings, this equitable relief is prohibited by the Anti–Injunction Act.

■ Plaintiff argues, however, that her claim fits within one of the exceptions to the Anti–Injunction Act because the ECOA expressly authorizes the equitable relief she now seeks. In support of this contention, Plaintiff points to the following statutory language:

> Upon application by an aggrieved applicant, the appropriate United States District Court *or any other court of competent jurisdiction* may grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under this subchapter.

15 U.S.C. § 1691e(c) (emphasis added). While this provision does expressly authorize injunctive relief generally, this alone does not suffice to fit the ECOA within a § 2283 exception. Again, the Third Circuit's decision in *U.S. Steel* is instructive. In that case, the court rejected the claim that ERISA constitutes an expressly authorized exception to the Anti–Injunction Act, even though ERISA provides that benefit plan participants can sue in federal court "to enjoin any act or practice which violates any provision of this chapter." *U.S. Steel,* 885 F.2d at 1177. In *U.S. Steel,* as here, "[c]onspicuously absent from the language of [the injunction provision] is any suggestion of its use by federal courts against state tribunals." *Id.*

The fact that nothing in the text of ECOA itself suggests an expressly authorized exception to the Anti–Injunction Act is not fatal to Plaintiff's argument. The Supreme Court has described the test for whether a statute "expressly"[4] authorizes an exception to the Anti–Injunction Act as

> whether an Act of Congress, clearly creating a federal right or remedy enforceable

---

**4.** *See 1975 Salaried Retirement Plan,* 968 F.2d at 408 (noting the "deceptively simple" wording of

§ 2283).

in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding.

*Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) (holding that § 1983 is an expressly authorized exception to § 2283); *see also Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 633, 97 S.Ct. 2881, 2888–89, 53 L.Ed.2d 1009 (1977) (plurality opinion) (holding that in the absence of specific statutory language, legislative history must contain adequate proof that "Congress recognized and intended the statute to authorize injunction of state-court proceedings"); *1975 Salaried Retirement Plan,* 968 F.2d at 408–410; *U.S. Steel,* 885 F.2d at 1175–1178 (holding that ERISA is not an expressly authorized exception based on statutory language and legislative history).

We find that we need not stay the state court proceedings to give the ECOA its intended scope. Plaintiff argues that "the fundamental and remedial purpose of ECOA" is "to provide a federal forum for enforcement of a federally created right designed to protect innocent spouses." (Pl.'s Mem. Contra Def.'s Mot. to Dismiss at 4).[5] This assertion simply does not square with the congressional grant of concurrent jurisdiction provided for in the statutory text highlighted above ("the appropriate United States District Court *or any other court of competent jurisdiction* may grant such equitable and declaratory relief ...") or with the legislative history of the statute.[6] Plaintiff has availed herself of this concurrent jurisdiction by asserting her ECOA claims in the petitions filed in both state courts to strike and/or open the confessed judgments. Defendants contend, and Plaintiff does not dispute, that execution of the judgments has been stayed in both courts pending resolution of Plaintiff's petitions. Nothing in the statute itself or its legislative history suggests that we should usurp the state courts' authority by taking it upon ourselves to step in and decide

these federal issues. Rather, it is entirely consistent with the congressional grant of concurrent jurisdiction to allow the state courts in Lancaster and Chester Counties to decide Plaintiff's federal claims and award equitable relief as appropriate.

## CONCLUSION

We find that this action reflects nothing more than Plaintiff's bare desire to have her federal claims litigated in federal court, presumably because we will be either more hospitable to or knowledgeable of the federal issues she raises. Implicit in this argument is a distrust of state courts that runs counter to spirit of "Our Federalism," *see Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and goes to the heart of the policy underlying the Anti–Injunction Act. Congress granted concurrent jurisdiction over ECOA claims because it trusted state courts to give full effect to federal rights such as those Plaintiff asserts here. Such a grant of concurrent jurisdiction presumes that we are no better equipped to adjudicate Plaintiff's federal claims than are the Courts of Common Pleas of Lancaster and Chester Counties. Should the state courts err in their application of federal law, of course, the United States Supreme Court retains its appellate jurisdiction.

Accordingly, we grant Defendant's Motion to Dismiss.

---

**5.** In support of this contention, Plaintiff asserts that "[v]irtually all of the cases construing ECOA and Regulation B have been decided by the federal courts—indeed, the undersigned counsel has been unable to uncover a single Pennsylvania state court decision construing the statute." (Pl.'s Mem. Contra Def.'s Mot. to Dismiss at 4 n. 5). While this may be true as an empirical matter, this fact sheds no light on whether Congress intended this to be the case.

**6.** *See, e.g.,* H.R.Conf.Rep. No. 873, 94th Cong., 2d Sess. (1976); S.Rep. 589, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin.News 1976, pp. 403, 427.