*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0080P (6th Cir.)
File Name: 04a0080p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARTINGALE LLC; BRIDGE
THE GAP, INC.,
  *Plaintiffs-Appellants,*

  *v.*

CITY OF LOUISVILLE;
WATERFRONT DEVELOPMENT
CORPORATION,
  *Defendants-Appellees.*

No. 02-5895

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 01-00255—Charles R. Simpson, III, District Judge.

Argued: October 22, 2003

Decided and Filed: March 17, 2004

Before: BOGGS, Chief Judge; GIBBONS, Circuit Judge;
GWIN, District Judge.[*]

---

[*] The Honorable James S. Gwin, United States District Judge for the
Northern District of Ohio, sitting by designation.

---

## COUNSEL

**ARGUED:** Donald L. Cox, LYNCH, COX, GILMAN &
MAHAN, Louisville, Kentucky, for Appellants. John L.
Tate, STITES & HARBISON, Louisville, Kentucky, for
Appellees. **ON BRIEF:** Donald L. Cox, William H.
Mooney, LYNCH, COX, GILMAN & MAHAN, Louisville,
Kentucky, Theodore L. Mussler, Jr., MUSSLER &
ASSOCIATES, Louisville, Kentucky, for Appellants. John
L. Tate, Emily R. Hartlage, STITES & HARBISON,
Louisville, Kentucky, for Appellees.

---

## OPINION

---

JAMES S. GWIN, District Judge. In this case, Martingale,
LLC ("Martingale") and Bridge the Gap, Inc. ("Bridge the
Gap") appeal the district court's ruling permitting the City of
Louisville ("City") and the Waterfront Development
Corporation to condemn a structure known as the Big Four
Bridge. The Big Four Bridge connects Jeffersonville, Indiana
with Louisville, Kentucky. The City and the Waterfront
Development Corporation wish to use the bridge as part of a
public park, but Martingale and Bridge the Gap contend that
the City has no legal power to condemn the bridge.

For the following reasons, the district court's decision is
AFFIRMED.

## I. Background

The story of this case begins in 1888, when the Kentucky General Assembly chartered the Louisville and Jeffersonville Bridge Company ("Bridge Company"). The Bridge Company's charter provided it the "right and power to construct, maintain and operate" a bridge to make rail connections between the railroad lines on each side of the Ohio River. A year later, the Bridge Company approved final plans for the bridge, and in 1895, construction was completed.

In 1927, the Cleveland, Cincinnati, Chicago, and St. Louis Railroad Company (known as the "Big Four Railroad Company") acquired an interest in the bridge from the Bridge Company. Over the following two years, the bridge and its approaches were rebuilt. Years later, in 1955, the Bridge Company and Big Four merged, making Big Four the bridge's sole owner and the operator.

Through a series of subsequent mergers, Big Four became a part of the Penn Central Transportation Company ("Penn Central"). In 1968, Penn Central decided that due to its merger with the New York Central Railroad Company, certain rail lines were surplus, and that continuing to operate these lines would be a "financial burden . . . and an undue burden on interstate commerce." The rail line crossing the bridge was one such line. A year later, the Interstate Commerce Commission ("ICC") approved Penn Central's application to abandon the bridge. In 1969, the rail line spanning the bridge was thus abandoned.[1]

Five years later, the bridge's approaches were removed. The bridge remains in this condition today, completely inaccessible to humans. For the past thirty years, the bridge has not been functional.

The bridge's abandonment did not stop the transfer of the bridge. Penn Central Transportation Company went bankrupt in 1970 and transferred all of its properties other than operating railroads to the Penn Central Corporation. But the Penn Central Corporation did not keep the bridge, either. In 1982, Charles R. Hammond ("Hammond") acquired the bridge and then transferred it to the Louisville and Jeffersonville Bridge Corporation ("Bridge Corporation"), of which he was president. Hammond then transferred all of the real property associated with the bridge, but not the bridge itself, to the Kentucky Real Estate Holding Corporation.

In 1987, Bridge the Gap acquired the bridge at a Sheriff's sale for $10,300. The Waterfront Development Corporation purchased the real estate surrounding the bridge pylon on the Kentucky side of the river in 1995. In 2000, Bridge the Gap sold its interest in the bridge to Martingale for $400,000, retaining only the right to display holiday lights on the bridge for a ten-year period.[2]

Hoping to use the bridge as a pedestrian walkway as a part of the City's Waterfront Park, the City of Louisville passed a resolution authorizing condemnation of the bridge on November 28, 2000. In April 2001, Bridge the Gap and Martingale sued in the United States District Court for the Western District of Kentucky. Their suit sought a declaratory judgment of their right to insulate the bridge from

---

[1] The record is not clear on what exactly was abandoned. One way to read the record indicates that only the rail line was abandoned, and that the ICC proceeding had no effect on the bridge. Another interpretation holds that Penn Central abandoned the bridge when it abandoned the rail line. Regardless, this ambiguity does not affect our resolution of the case.

[2] Because the sale contract was contingent upon the grant of certain permits from the City and the Waterfront Development Corporation, the sale may not have been consummated. However, Martingale apparently has at least an equitable lien on the Bridge under the terms of the contract.

condemnation, an injunction restraining the City of Louisville and the Waterfront Development Corporation from condemning the bridge, compensatory damages, costs, and attorneys' fees. In July 2001, the City filed suit in Kentucky state court to condemn the bridge.

On June 5, 2002, the district court entered summary judgment in favor of the City and the Waterfront Development Corporation. The court reasoned that: (1) the bridge is not in interstate commerce; (2) the Rivers and Harbors Act does not prohibit condemnation of the bridge; (3) the bridge's status as a post route does not prohibit condemnation; and (4) the plaintiffs' alleged franchises had been forfeited in 1969 when the ICC permitted Penn Central to abandon the bridge. Additionally, the district court held that even if the plaintiffs possessed the alleged franchises, this was no bar to condemnation because the City and the Waterfront Development Corporation could condemn the franchises and pay the plaintiffs reasonable compensation for them. Plaintiffs Martingale and Bridge the Gap now appeal the district court's grant of summary judgment.

## II. Summary of the Parties' Arguments

Martingale and Bridge the Gap argue that summary judgment was inappropriate because they presented enough evidence to the district court to create issues of material fact with regard to: (1) whether the bridge is in interstate commerce, and if so, whether the City's attempt to condemn it is an impermissible burden on interstate commerce; (2) whether the bridge and any franchises to operate it were abandoned as a matter of law under the ICC's procedures for abandoning a rail line; (3) whether a municipality in Kentucky can condemn a federal, Kentucky, or Indiana franchise to own and operate bridge over the Ohio River; and (4) whether the City of Louisville can condemn personal property for use in a park.

The City of Louisville and the Waterfront Development Corporation respond by arguing that there are no issues of material fact regarding any of the above-mentioned issues, and that the district court correctly granted judgment in their favor as a matter of law. Additionally, the City and the Waterfront Development Corporation say that the Anti-Injunction Act, 28 U.S.C. § 2283, prohibits this Court from enjoining a state court condemnation proceeding.

The Court analyzes these arguments below.

## III. Standard of Review

An appellate court reviews a district court's grant of summary judgment *de novo*. *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 597 (6th Cir. 1999). Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It is not sufficient for the non-moving party merely to show some possibility of doubt as to the material facts. *Id.*

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *National*

*Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

## IV. Analysis

The City and the Waterfront Development Corporation assert that even if Martingale and Bridge the Gap's arguments are meritorious, the federal Anti-Injunction Act, 28 U.S.C. § 2283, barred the district court from granting the requested relief. If the City and the Waterfront Development Corporation are correct, then we need not reach the merits of the case with respect to Martingale and Bridge the Gap's claims for declaratory and injunctive relief. For this reason, we open our analysis with this issue.

The district court did not address the Waterfront Development Corporation and the City's Anti-Injunction Act argument. Regardless, this Court may consider it. This would be the case even if the parties did not raise the issue. *See, e.g.*, *Gloucester Marine Rys. Corp. v. Charles Parisi, Inc.*, 848 F.2d 12, 15 (1st Cir. 1988); *Hickey v. Duffy*, 827 F.2d 234, 243 (7th Cir. 1987).

According to the City and the Waterfront Development Corporation, the Anti-Injunction Act forbade the district court from granting the relief that Martingale and Bridge the Gap requested. The City and the Waterfront Development Corporation claim that the Anti-Injunction Act bars relief because Martingale and Bridge the Gap seek injunctive relief and because their claims do not fit into any of the Anti-Injunction Act's three exceptions.

In response, Martingale and Bridge the Gap assert that the Anti-Injunction Act is inapplicable because they seek declaratory relief in addition to an injunction. Additionally, they argue that the Anti-Injunction Act cannot apply because they requested that the injunction be directed against the City and the Waterfront Development Corporation, not against the state courts. Finally, Martingale and Bridge the Gap assert that the Anti-Injunction Act does not prohibit injunctions that forbid the commencement of state court proceedings.

We now turn to these arguments, using the text of the Anti-Injunction Act as a starting point. The Anti-Injunction Act states in full:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The Supreme Court has, on several occasions, recognized that the Anti-Injunction Act creates "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286-87, 90 S. Ct. 1739, 1743 (1970); *see also Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630-31, 97 S. Ct. 2881, 2886 (1977). These three exceptions, embedded within the statute's text, permit injunctions against state court proceedings (1) where Congress expressly authorizes, (2) where necessary in aid of the court's jurisdiction, and (3) where necessary to protect or effectuate the court's judgments. *See* 28 U.S.C. § 2283.

Martingale and Bridge the Gap fit into none of the Act's exceptions. First, the parties do not assert, nor do we find, that Congress expressly authorizes injunctions against state courts in the Rivers and Harbors Act, 33 U.S.C. §§ 401 *et seq*.

Second, the injunction they seek is not necessary in aid of the court's jurisdiction. Courts have applied this second exception in only two scenarios: where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does. *See, e.g.*, 17 Wright, Miller, & Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 4225, at 528 (1988); Erwin Chemerinsky, *Federal Jurisdiction,* §11.2.3, at 699-700 (3d ed. 1999). Neither of these scenarios applies in this case.[3] Further, the existence of a federal right not to have property taken without just compensation does not render equitable relief necessary in aid of the federal courts' jurisdiction. First of all, Martingale and Bridge the Gap have failed to show a violation of this right. Second, the Supreme Court has noted that "when a state proceeding presents a federal issue, even a pre-emptive issue, the proper course is to seek resolution of that issue by the state courts." *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 149-50, 108 S. Ct. 1684, 1691 (1988).

---

[3]Although this case does involve aspects of real property law, jurisdiction over these parties is based on in personam, rather than in rem, principles. Therefore, the "in aid of jurisdiction" exception does not apply. *See Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 641-42 (1977) (declining to apply the "necessary in aid of jurisdiction" exception where the federal and state actions were based on in personam jurisdiction, and noting that "[t]he traditional notion is that in personam actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to § 2283 was intended to alter this balance."); *see also In re Am. Honda Motor Co., Inc., Dealerships Relation Litig.,* 315 F.3d 417, 439 (4th Cir. 2003) ("The 'necessary in aid of its jurisdiction' exception to the Anti-Injunction Act is widely understood to apply most often when a federal court was the first in obtaining jurisdiction over a *res* in an *in rem* action and the same federal court seeks to enjoin suits in state courts involving the same *res*."); *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 806 (9th Cir. 2002) (indicating that the most prominent form of the "in aid of jurisdiction" exception is for in rem actions); *In re Diet Drugs,* 282 F.3d 220, 234 (3d Cir. 2002).

Finally, because there has been no prior federal court decision on the matter of the bridge, Martingale and Bridge the Gap cannot show that an injunction would be "necessary to promote or effectuate [the court's] judgments."

Martingale and Bridge the Gap's arguments against applying the Anti-Injunction Act are unavailing. They argue that the Anti-Injunction Act may bar their request for an injunction, but not their claim for declaratory relief. Martingale and Bridge the Gap's argument is clever, but unpersuasive. Their ultimate goal is to halt the state court condemnation proceedings, a result that either an injunction or a declaratory judgment would accomplish equally well. Other parties have tried this ruse, and most courts that have addressed this issue have rejected their argument. *See, e.g.*, *Am. Airlines, Inc. v. Dep't of Transp.,* 202 F.3d 788 (5th Cir. 2000), *cert. denied* 530 U.S. 1274, 120 S. Ct. 2740 (2000); *U.S. Steel Corp. Plan for Employee Ins. Benefits v. Musisko,* 885 F.2d 1170, 1175 (3d Cir. 1989), *cert. denied*, 453 U.S. 1074 (1990); *Gloucester Marine Rys. Corp.,* 848 F.2d at 15; *Texas Employers' Ins. Ass'n v. Jackson,* 862 F.2d 491, 498-99 (5th Cir. 1988) (en banc), *cert. denied,* 490 U.S. 1035 (1989); *Bledsoe v. Fulton Bank*, 940 F. Supp. 804, 808 (E.D. Pa. 1996). This Court follows the guidance of these courts and determines that where, as here, declaratory relief would have the same practical effect as an injunction, the Anti-Injunction Act precludes the court from granting a declaratory judgment.

Additionally, Martingale and Bridge the Gap argue that the Anti-Injunction Act does not prevent a court from enjoining the parties from *commencing* state court proceedings, as opposed to enjoining the parties from *proceeding with* already-filed state actions. They are correct. However, this is of no moment to the instant case because the City filed its condemnation action in July 2001. Because the condemnation action has been pending since that time, the Anti-Injunction Act prohibits any federal court from granting the declaratory or injunctive relief that Martingale and Bridge

the Gap seek. In other words, an injunction issued anytime after July 2001 would not prevent the parties from commencing state court litigation; it would stop the parties from proceeding with existing state court litigation, which is exactly what the Anti-Injunction Act prohibits.

The Court finds support for this analysis in its own precedent. In *Roth v. Bank of the Commonwealth*, 583 F.2d 527 (6th Cir. 1978), state court litigation commenced after the federal suit was filed. The district court relied on a Seventh Circuit precedent to grant an injunction.

This Court reversed, concluding,

> we are led inevitably to the conviction that the logic of [the Seventh Circuit's opinion in] *Barancik* [*v. Investors Finding Corp.*, 489 F.2d 933 (7th Cir. 1973)] (which in effect says that state proceedings which are commenced in fact are not commenced in law if commenced after the time the judicial power of the federal court was invoked) amounts to precisely that type of judicial improvisation which the Supreme Court has warned us to avoid.

*Id*. at 534. Therefore, the fact that the City did not file the state court lawsuit until after Bridge the Gap and Martingale filed suit in the federal district court has no bearing on the applicability of the Anti-Injunction Act. For these reasons, we conclude that the Anti-Injunction Act applies and that the district court lacked the power to grant Martingale and Bridge the Gap's requested injunctive and declaratory relief.

The injunctive and declaratory relief sought by Martingale and Bridge the Gap is clearly the heart of this case. Yet, included in the prayer for relief in plaintiffs' "Complaint for Declaration of Rights and Injunctive Relief" is a request for compensatory damages and attorneys' fees. A brief mention of monetary injury "in the form of lost business opportunities and attorneys fees" is included elsewhere in the complaint.

The complaint alleges no further facts in support of this relief and fails to allege any claim or theory of recovery for which plaintiffs seek compensatory damages or attorneys' fees.[4] The complaint fails to allege a claim for intentional interference with prospective contractual relations under Kentucky law. *See Nat'l Collegiate Athletic Ass'n v. Hornung,* 754 S.W.2d 855, 858-59 (Ky. 1988) (requiring allegations of an improper motive, consisting of malice or some wrongful conduct on behalf of defendant). Likewise, the complaint fails to allege a claim for a Takings Clause violation. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985) (requiring an allegation of a deprivation of due process or a denial of fair compensation). Because this stray request for monetary relief is not accompanied by any alleged claim on which the relief could be based, our determination that the Anti-Injunction Act bars declaratory and injunctive relief concludes the case. It is unnecessary for us to reach the issues on which the district court based its decision.

We therefore AFFIRM the district court's decision to grant summary judgment in favor of the City of Louisville and the Waterfront Development Corporation.

---

[4]Moreover, the appellate briefs do not mention compensatory damages or attorney's fees.