RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0139p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

HANOVER AMERICAN INSURANCE COMPANY,

*Plaintiff-Appellee*,

v.

TATTOOED MILLIONAIRE ENTERTAINMENT, LLC, et al.,

*Defendants*,

JOHN FALLS,

*Defendant-Appellant*.

⎬  No. 21-5671

─────────────────

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:20-cv-02834—Jon Phipps McCalla, District Judge.

Argued:  April 28, 2022

Decided and Filed:  June 28, 2022

Before:  McKEAGUE, GRIFFIN, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Malcolm B. Futhey III, FUTHEY LAW FIRM PLC, Memphis, Tennessee, for Appellant.  Jeremy T. Grabill, PHELPS DUNBAR LLP, New Orleans, Louisiana, for Appellee. **ON BRIEF:**  Malcolm B. Futhey III, FUTHEY LAW FIRM PLC, Memphis, Tennessee, for Appellant.  Jeremy T. Grabill, Mark C. Dodart, PHELPS DUNBAR LLP, New Orleans, Louisiana, for Appellee.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.

Following a 2015 burglary and fire at the House of Blues music studio in Memphis, Tennessee, a jury awarded $2.5 million to defendant John Falls pursuant to his insurance policy with plaintiff Hanover American Insurance Company. Despite that judgment in Falls's favor, the parties continue to fight over whether Falls is entitled to that entire award. Falls filed suit against defendants Christopher Brown and Tattooed Millionaire Entertainment, LLC (TME) in Tennessee state court, and Hanover filed an interpleader action against Brown, TME, and Falls in federal court. Hanover then moved the federal district court to enjoin Falls's state-court proceeding. The court granted the injunction, concluding that doing so was "necessary in aid of its jurisdiction" under the Anti-Injunction Act, 28 U.S.C. § 2283. We disagree and reverse.

I.

This case stems from insurance fraud committed by Christopher Brown and TME, his production company. A comprehensive recitation of the underlying facts is set forth in *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC* (*Hanover I*), 974 F.3d 767, 771–75 (6th Cir. 2020). In short, TME owned the House of Blues recording studio in Memphis and leased one of the building's studios to Falls. Hanover issued separate insurance policies to TME and Falls for business personal property (BPP) and for lost business income (BI). In 2015, intruders broke into the House of Blues, vandalized and burgled the studio, and committed arson. Hanover made advance payments to both TME and Falls, but after an investigation, Hanover discovered that Brown had submitted false receipts and had been the target of several similar arson and burglary incidents in the past few years. Hanover sued Brown, TME, and Falls, seeking recovery of the prepaid funds and a declaratory judgment that it did not owe any payments under the insurance policies. Following trial, the jury found that Brown had made material misrepresentations and thus returned a verdict against him, but it found Falls not liable for misrepresentations. Instead, it found that Hanover had breached its contract with Falls and that Falls was entitled to recover

the full $2.5 million in BPP insurance and $250,000 in BI insurance as set forth in his policy. Following the verdict, Hanover filed a motion under Fed. R. Civ. P. 50(b) seeking to overturn the verdict in favor of Falls because TME was named as an additional insured on Falls's policy and language in his insurance policy voided coverage if "you or any other insured" misrepresented a material fact. The trial court granted the motion.

However, we reversed on appeal, concluding that Hanover forfeited its Rule 50(b) motion by not first filing a Rule 50(a) motion as to Falls. *See Hanover I*, 974 F.3d at 779–90. In doing so, we declined to address Hanover's alternative argument for affirmance that payment of the $2.5 million in BPP insurance would violate Tennessee public policy, which dictates that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." *Id*. at 790 (quoting *Box v. Lanier*, 79 S.W. 1042, 1045 (Tenn. 1904)). But we explained that, even if Hanover were correct, Falls still had some property interests and could be entitled to some recovery. *Id*. at 790–91. Thus, we noted that "the proceeds will become the subject of an interpleader action" between the parties:

> This was the district court's plan for how to handle the issue: Falls and TME would "sue each other" in the event of a win, but not fight it out during the main trial. Though Falls and Hanover both make interesting legal arguments as to the dispositions of the funds, we see no reason to short-circuit that plan. Such arguments can be made in whatever subsequent proceedings arise over this payment.

*Id*. at 791. On remand, the district court entered judgment against Hanover and for Falls. That judgment did not require Hanover to pay the $2.5 million into the court's registry for later distribution.

Before *Hanover I* was decided, Falls filed a complaint for monetary damages and declaratory relief against Brown and TME in Tennessee state court. *See Falls v. Brown*, Case No. CT-3322-20 (Shelby Cnty. Cir. Ct. Aug. 17, 2020). Three months later, Hanover filed a complaint for interpleader and declaratory relief against Brown, TME, and Falls in federal court under Fed. R. Civ. P. 22, requesting that the court find the $2.5 million BPP award void pursuant

to Tennessee public policy or, alternatively, determine to whom Hanover should pay the award or any portion thereof.

Hanover then sought to enjoin Falls's state court action, contending that the district court could do so under the Anti-Injunction Act, 28 U.S.C. § 2283, as an injunction would be "in aid of its jurisdiction." Falls responded that the district court should deny the motion because that exception did not apply. Falls also filed a motion to dismiss and a motion to stay the district court proceedings until the state-court proceedings concluded. The district court denied Falls's motions and granted Hanover's motion to enjoin the state-court proceedings, determining that the "in aid of its jurisdiction" exception to the Anti-Injunction Act applied.

Falls now appeals the district court's grant of Hanover's motion to enjoin the state-court action and its denial of his motion to dismiss.

II.

We begin with the principal issue in this appeal: whether the district court properly enjoined the state-court proceedings under the Anti-Injunction Act. As he did before the district court, Falls contends that the "in aid of its jurisdiction" exception to the Act does not apply. We agree.

"We review de novo the district court's legal determination as to whether an injunction may issue under the Anti–Injunction Act." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). "However, the fact that an injunction may issue under the Act does not mean that it must issue." *Id*. (citation omitted). Thus, the "decision whether to issue an injunction that does not violate the Act is reviewed for an abuse of discretion." *Id*. (citation omitted).

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as [1] expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283. The "Act is an absolute prohibition . . . against enjoining state court proceedings, unless the injunction falls within one of [its] three specifically defined exceptions." *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286

(1970). The Act's "message is one of respect for state courts," namely that they should "remain free from interference by federal courts." *Smith v. Bayer Corp*, 564 U.S. 299, 306 (2011) (citation omitted). As a result, its exceptions "are narrow" and should not "be enlarged by loose statutory construction." *Id*. (citations omitted).

This appeal focuses solely on whether the "necessary in aid of its jurisdiction" exception applies.[1] This exception has historically been applied when the federal court acquires "in rem" jurisdiction over specific property such that it is "necessary" to prevent other courts from interfering with a court's disposition of that property. *See* 17A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc.: Jurisdiction 2d § 4225 (3d ed.). "Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922). As the Supreme Court has described:

> The rule, therefore, that the court first acquiring jurisdiction shall proceed without interference from a court of the other jurisdiction is a rule of right and of law based upon necessity, and where the necessity, actual or potential, does not exist the rule does not apply. Since that necessity does exist in actions in rem and does not exist in actions in personam, involving a question of personal liability only, the rule applies in the former but does not apply in the latter.

*Id.* at 235. The "necessary in aid of its jurisdiction" exception, codified in the 1948 revision of the Anti-Injunction Act, is "fairly read as incorporating this historical in rem exception." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641 (1977) (plurality opinion).

---

[1]In the district court, Hanover conceded that the first "authorized by Congress" exception does not apply but argued that both the second "in aid of its jurisdiction" and third "to protect or effectuate its judgments" exceptions did apply. The district court decided the case only under the second exception without addressing the third. Regardless of whether such an argument was meritorious, Hanover could have raised the third exception as an alternative ground for affirmance on appeal. *See Dandridge v. Williams*, 397 U.S. 471, 475 n.6 (1970). But it did not do so, meaning that the issue has been abandoned on this appeal. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006).

We have addressed this exception in three cases of note. First, in *Martingale LLC v. City of Louisville*, 361 F.3d 297 (6th Cir. 2004), the parties disputed whether a federal court could enjoin a state court condemnation lawsuit related to Big Four Bridge in Louisville, Kentucky. *Id*. at 299. Louisville had passed a resolution authorizing condemnation of the bridge for use as a pedestrian walkway; the bridge's owner, Martingale, filed a declaratory action in federal court before Louisville filed its state condemnation suit. *Id*. at 300. We determined that none of the Anti-Injunction Act exceptions applied. *Id*. at 304. Regarding the second exception, we clarified that "[c]ourts have applied this second exception in only two scenarios: where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does." *Id*. at 302. But, there, neither scenario applied. *Id*. at 302–03. The suit involved property (the bridge), but jurisdiction was "based on in personam, rather than in rem, principles." *Id*. at 303 n.3. As the Supreme Court has said, "when a state proceeding presents a federal issue, even a pre-emptive issue, the proper course is to seek resolution of that issue by the state courts." *Id*. at 303 (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149–50 (1988)). It also did not matter that Louisville filed its state action after Martingale filed its federal action—the Anti-Injunction Act could apply so long as the state court action was pending when Louisville sought the injunction. *Id*. at 303–04. The "Act does not prevent a court from enjoining the parties from *commencing* state court proceedings, as opposed to enjoining the parties from *proceeding with* already-filed state actions." *Id*. *See also Roth v. Bank of the Commonwealth*, 583 F.2d 527, 531–34 (6th Cir. 1978) (noting that a district court may enjoin parties from beginning state proceedings but concluding that the Anti-Injunction Act may still apply when a state lawsuit begins after the federal lawsuit).

Next, in *In re Life Investors Insurance Company of America*, 589 F.3d 319 (6th Cir. 2009), we vacated an order enjoining a state court action entered by the district court. *Id*. at 332. The plaintiffs, a putative class of insurance customers, sued the defendant insurance company in federal court. *Id*. at 322. But this was not the only lawsuit against the defendant—others, including one in Arkansas, were also pending. *Id*. at 328. The defendant had reached a settlement agreement in the Arkansas case, but the district court enjoined the Arkansas case under the Anti-Injunction Act and the All Writs Act, 28 U.S.C. § 1651(a), because it believed

that doing so was "necessary in aid of its jurisdiction." *Id*. at 329–30.  We vacated the injunction on appeal—following *Martingale*, we again explained that the exception applied only where the case is removed or where the federal court acquires in rem or quasi in rem jurisdiction over real property.  *Id*. at 330.  The district court's injunction was thus not proper: "[b]ecause this case is not an *in rem* action and was not removed from state court, all we have here is a parallel *in personam* action in state court."  *Id*.  Such "a simultaneous *in personam* state action does not interfere with the jurisdiction of a federal court in a suit involving the same subject matter." *Id*. (quoting *Roth*, 583 F.2d at 535).  In vacating the injunction, we also rejected the plaintiffs' argument that the Court should expand the scope of the exception to a third use "under which federal courts can essentially take ownership of complex, typically class action, cases to the exclusion of the state courts."  *Id*. at 331.  Those types of cases were "materially distinguishable" as they involved circumstances "when numerous cases have been consolidated by the Multi–District Litigation [MDL] panel, the MDL judge has put forth considerable effort coordinating discovery or settlement discussions, and the state court action could potentially affect the federal class and federal settlement."  *Id*. at 331 n.11.  Thus, even if we "were inclined to expand our interpretation of the scope of the 'in aid of jurisdiction' exception," that case was not an appropriate candidate for doing so, in part because the district court had not certified a class. *Id*. at 331–32.  "When there is no risk of harm to a party's rights and no risk of harm to the rights of a class that does not exist, we see no reason to extend the reach of the All Writs Act beyond our prior precedents." *Id*. at 332.

Our decision in *Lorillard Tobacco Company v. Chester, Willcox & Saxbe*, 589 F.3d 835 (6th Cir. 2009), followed shortly thereafter.  There, the parties were involved in a federal class action suit related to treatment of smoking-related illnesses.  *Id*. at 837–38.  After an initial settlement agreement was reached, a dispute arose over supplemental payments and the distribution of attorneys' fees—this dispute led to another class action suit during which the plaintiffs deposited the disputed fee amount ($66.34 million) into the district court's registry.  *Id*. at 838–39.  The second suit resulted in another settlement agreement that distributed the disputed amount and provided that the federal court "shall retain exclusive jurisdiction over any and all disputes relating to this Settlement Agreement, the enforcement of this Settlement Agreement and any monies to be allocated, advanced or recouped pursuant to this Settlement Agreement."

*Id*. at 840, 842–43.  The final judgment reflected this language.  *Id*. at 842.  But prior to entry of the settlement agreement, one of the defendants filed another suit in Florida state court, and another party subsequently sought to enjoin that state action.  *Id*.  The district court entered an injunction under the "in aid of its jurisdiction" exception, and we affirmed.  *Id*. at 843, 851.  That "exception is applicable to a district court's continuing authority to enforce a settlement agreement where the agreement is either incorporated into the court's final judgment or the court expressly retains jurisdiction over the agreement in such judgment."  *Id*. at 844.  The district court order enjoined parties from bringing claims related to the subject matter of the settlement agreement, and if "a court issues an injunction, it automatically retains jurisdiction to enforce it." *Id*. at 847 (citation omitted).  Therefore, the district court's injunction was "a proper means of enforcing its previously entered permanent injunction."  *Id*.  The agreement evidenced the parties' intent to confer broad enforcement powers on the district court.  *Id*. at 847–48.  Further, "that this federal case involves a complex class settlement also provides an additional reason why the district court's injunction against the state-court litigation is proper."  *Id*. at 848.  A class action suit is "analogous to . . . an in rem action . . . where it is intolerable to have conflicting orders from different courts."  *Id*. (quoting *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985)).  Therefore, the injunction was "necessary to prevent the litigation of any claims predicated on this factual determination in the state court and to protect the district court's ability to manage the distribution of the class settlement fund."  *Id*. at 848–49.  Finally, because the district court had exclusive control over the res at issue, the $66.34 million deposited by the plaintiffs in the action, "any dispute regarding entitlement to the res that is brought before a different court threatens 'to defeat or impair the jurisdiction of the federal court' to determine the rights of the parties before it."  *Id*. at 849 (quoting *Kline*, 260 U.S. at 229).

Applying those decisions to this case reveals that the district court erred in concluding that an injunction here was "necessary in aid of its jurisdiction."  This exception applies in two circumstances:  1) when the case is removed from state court or 2) where the federal court has in rem or quasi in rem jurisdiction over specific property.  It is undisputed that the first circumstance does not apply.  And, more pertinently here, this proceeding is not in rem.  "In rem proceedings encompass any action brought against a person in which the essential purpose is to determine title to or affect interests in specific property located within the territory over which

the court has jurisdiction." 1 Am. Jur. 2d *Actions* § 29 (May 2022 Update). Here, however, there is no specific property. That this dispute centers around Falls's $2.5 million BPP award does not mean that this proceeding is in rem—those funds have not been identified and reduced to specific property placed within the jurisdiction of the district court. Hanover could have deposited those funds into the district court's registry, thereby placing those funds within the exclusive jurisdiction of the district court, to transform this case into an in rem proceeding. *See, e.g., Farmers' Loan & Trust Co. v. Lake St. Elevated R.R. Co.*, 177 U.S. 51, 61 (1900) (recognizing that a proceeding is in rem where the court has possession of the res); *Republic Nat'l Bank of Mia. v. United States*, 506 U.S. 80, 84 (1992) ("[I]t long has been understood that a valid seizure of the res is a prerequisite to the *initiation* of an *in rem* civil forfeiture proceeding."); *De Korwin v. First Nat'l Bank of Chicago*, 267 F.2d 337, 340 (7th Cir. 1959) (concluding that the district court had in rem jurisdiction because it had "exclusive control and jurisdiction over the entire corpus of the trust estate"). But Hanover did not do so. Instead, it argues that it did not need to do so under Rule 22 while continuing to contest whether it is liable to pay all or part of that award. That choice further reinforces the conclusion that this proceeding is in personam because Hanover continues to litigate its own liability. "[A]n action is in personam when its object is to obtain a personal judgment against the defendant, upon which a general execution may be awarded directing the collection of the judgment out of any property of the defendant anywhere to be found[.]" 1 Am. Jur. 2d *Actions* § 28 (May 2022 Update). Our caselaw is clear—actions in personam, such as that here, do not fall within the ambit of the "in aid of its jurisdiction" exception to the Anti-Injunction Act.

To avoid this conclusion, Hanover argues that our caselaw is not so clear. It points to *Lorillard*, where we did not discuss this "in rem" framework and concluded that the district court's injunction was proper. It contends that *Lorillard* supports an injunction here because, as in that case, the parties' dispute here centers on a finite sum of money. Indeed, the district court agreed with Hanover and concluded that *Lorillard* was analogous.

We disagree. While *Lorillard* never described the "in rem" requirement for the "in aid of its jurisdiction" exception, that decision must be interpreted in light of *Martingale* and *Life Investors*. *Martingale* and *Life Investors* both explained that the exception applies when the case

is removed or the district court has in rem jurisdiction. Each followed this framework, and *Lorillard* did too, despite not mentioning either earlier case. There, the district court had control over the res at issue—the $66.34 million deposited by the plaintiffs—and was authorized by the settlement agreement to control the distribution of those funds. The federal court thus clearly had in rem jurisdiction to determine the rights of the parties to the property at issue. The settlement agreement explicitly confirmed this by giving the federal district court exclusive control over distributing those proceeds. *Lorillard*, thus, further confirms that, absent removal, the "in aid of its jurisdiction" exception requires in rem jurisdiction.

Consequently, because *Lorillard* was an in rem jurisdiction case, it is materially distinguishable from this case. While there are some similarities between the settlement award in *Lorillard* and the disputed BPP award here, those similarities do not bring this case within the in rem jurisdiction required by the "in aid of its jurisdiction" exception. The parties—Brown, TME, Falls, and Hanover—are still litigating who is responsible for paying the other. Hanover has a personal judgment against it but has raised arguments based on Tennessee public policy that it is not liable for all or part of that judgment. That there is a finite amount of money contested does not mean that there is a "specific property," i.e., a pool of specific funds, over which the district court has control. *See* 1 Am. Jur. 2d Actions § 29. Further, the close relationship between the state and federal actions does not render an injunction necessary here. "[A] federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Atl. Coast Line*, 398 U.S. at 294. Rather, "when a state proceeding presents a federal issue, even a pre-emptive issue, the proper course is to seek resolution of that issue by the state court." *Martingale*, 361 F.3d at 303 (quoting *Chick Kam Choo*, 486 U.S. at 149–50). And a "simultaneous *in personam* state action does not interfere with the jurisdiction of a federal court in a suit involving the same subject matter." *Life Investors*, 589 F.3d at 330 (quoting *Roth*, 583 F.2d at 535).

Hanover presents two other arguments in support of its position that an injunction is necessary here. First, at oral argument, Hanover contended that this proceeding is "quasi in rem" and, therefore, falls within the exception. But this is an unpreserved issue—nowhere in Hanover's briefing before this court or the district court did it raise this issue. "[A] party does not preserve an argument by raising it for the first time at oral argument[.]" *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331 (6th Cir. 2009). Even if Hanover had properly preserved this issue, it is without merit. An action quasi in rem is still an in rem proceeding—the difference being that, rather than resolve the interests of *all* persons in designated property, a quasi in rem proceeding resolves only the interests of *particular* persons, generally the parties to the action, in the property. *See Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958); 1 Am. Jur. 2d Actions § 30. Again, there is no specific property within the jurisdiction of the district court at issue here, so, just as there is no in rem jurisdiction, there is likewise no quasi in rem jurisdiction.

Second, Hanover argues that a strict application of the "in aid of its jurisdiction" analysis is "a strong overstatement of the law" and that this exception "is certainly not limited to such actions and has been applied more broadly by many courts." But this argument is unavailing. Hanover first cites *Atlantic Coast Line*'s description that "federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." 398 U.S. at 295. But this statement is taken out of context. In *Atlantic Coast Line*, the Supreme Court held that the Anti-Injunction Act did *not* authorize the federal court's injunction. *Id*. at 297. There, as here, both the state and federal courts had "concurrent jurisdiction" and "neither court was free to prevent either party from simultaneously pursuing claims in both courts." *Id*. at 295. "[T]he state court's assumption of jurisdiction over the state law claims and the federal preclusion issue did not hinder the federal court's jurisdiction so as to make an injunction necessary to aid that jurisdiction." *Id*. at 296.

Hanover also argues that other courts recognize a broader application of the "in aid of its jurisdiction" exception, pointing to two district-court decisions from this circuit, *In re Columbia/HCA Healthcare Corporation Billing Practices Litigation*, 93 F. Supp. 2d 876 (M.D.

Tenn. 2000), and *In re Inter-Op Hip Prosthesis Product Liability Litigation*, 174 F. Supp. 2d 648 (N.D. Ohio 2001). Those two decisions relied on caselaw from other circuits to conclude that the "in aid of its jurisdiction" also allowed a court to enjoin a state court proceeding in a consolidated MDL case. *See, e.g.*, *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) ("Other courts have extended the exception to consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation."). *Life Investors* recognized this caselaw as well. *See* 589 F.3d at 331 n.11 (citing cases). But while *Life Investors* did not disavow the possible applicability of the exception to "coordinated class action[s] under the authority of the MDL panel," it declined to rule on the issue as that case did not involve either scenario. *Id*. The same is true here—while the litigation between TME, Falls, and Hanover may be complex, it is neither a class action nor under the authority of the MDL panel. So regardless of whether those decisions from our sister circuits have merit, we follow the same path as *Life Investors* and reserve the issue for another case. An extension of the "in aid of its jurisdiction" exception, whether supported by our caselaw or not, is not warranted in this case.[2]

For these reasons, we hold that the district court erred when it enjoined Falls's state-court action. Because Hanover never deposited the $2.5 million into the district court's registry, the district court lacked the in rem jurisdiction needed for the "in aid of its jurisdiction" exception to the Anti-Injunction Act to apply.[3] We reach this conclusion with full understanding of its

---

[2]Additionally, contrary to what the district court noted, *Hanover I* did not oblige the parties to pursue a federal interpleader action rather than a similar state action. Our decision merely recognized that Hanover, Falls, and TME could raise the public policy arguments in "whatever subsequent proceedings arise over this payment," including a possible interpleader action. 974 F.3d at 791. That decision thus left the door open for the parties to pursue whatever action that followed, either state or federal.

[3]Hanover notes that it did not need to deposit the funds to initiate a rule interpleader action under Rule 22 as opposed to a statutory interpleader action under 28 U.S.C. § 1335. This is correct. *See, e.g.*, *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008) ("Rule 22 interpleader . . . unlike statutory interpleader, does not require the stake to be deposited in the federal court's registry."). *Compare* Fed. R. Civ. P. 22, *with* 28 U.S.C. § 1335(a)(2). But this argument misses the point. While Hanover did not *need* to deposit the $2.5 million to initiate its action, its decision not to do so is the reason why its requested injunction of the state-court proceedings must be denied. The outcome boils down to Hanover's choice. On one hand, Hanover can pay the $2.5 million into the district court's registry, giving the district court in rem jurisdiction and making an injunction necessary to aid the court's jurisdiction. On the other, Hanover can legitimately choose not to deposit the funds and continue to contest its liability to pay those funds, but doing so deprives the district court of the jurisdiction needed to enjoin the state-court proceedings.

practical consequences—it may be more efficient for the district court to oversee this case without a concurrent state-court action.  But the law allows an injunction only for *necessity*, not simply for efficiency.  And because the district court proceedings were not in rem, an injunction was not "necessary" to aid the district court's jurisdiction.  *See Kline*, 260 U.S. at 235.  Therefore, we vacate the injunction entered by the district court.[4]

## III.

We next turn to Falls's motion to dismiss.  Hanover argues that we lack jurisdiction over Falls's motion.  Given our conclusion as to the district court's injunction, we agree.

Under 28 U.S.C. § 1291, we have jurisdiction over "all final decisions of the district courts."  Generally, "a district court's decision is appealable under this section only when the decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"  *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).  But the denial of a motion to dismiss "has no such effect: indeed, the order ensures that litigation will continue in the District Court."  *Id.*  Because of this, we lack jurisdiction over the denial of Falls's motion to dismiss under § 1291.

Falls contends that we may exercise pendent appellate jurisdiction in this instance.  We may do so if the issues are "inextricably intertwined" with the issues over which the court has jurisdiction.  *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 44–46, 51 (1995); *United States v. Contents of Accts.*, 629 F.3d 601, 605–06 (6th Cir. 2011).  A claim is "inextricably intertwined" if "the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well."  *Mattox v. City of Forest Park*, 183 F.3d 515, 524 (6th Cir. 1999) (citation omitted).  But this is not the case here—no part of our injunction analysis even considers, let alone resolves, any of the arguments presented by Falls in

---

[4]Given our conclusion on this issue, we need not address Falls's alternative arguments for reversal, such as whether the district court erred by failing to cite an affirmative basis for issuing an injunction or whether a consideration of the four preliminary-injunction factors is necessary to issue an injunction here.

his motion to dismiss.  Therefore, the claims are not inextricably intertwined, and we lack jurisdiction over those claims.

IV.

For these reasons, we reverse the judgment of the district court, vacate the injunction, and remand for further proceedings consistent with this opinion.